UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KARA JO ALLEN, ET AL.

VERSUS

RED FROG EVENTS, LLC, ET AL.

CIVIL ACTION

NO. 17-1664-BAJ-EWD

**NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on August 14, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KARA JO ALLEN, ET AL.

VERSUS

RED FROG EVENTS, LLC, ET AL.

CIVIL ACTION

NO. 17-1664-BAJ-EWD

## REPORT AND RECOMMENDATION

Before the court is a Motion to Remand[1] filed by plaintiffs, Kara Jo Allen, Gabiel Allen, and Courtney Stricklin ("Plaintiffs"). The Motion to Remand is opposed[2] by defendant, Red Frog Events, LLC ("Red Frog"). For the reasons set forth herein, the undersigned recommends[3] that the Motion to Remand[4] be granted and that this suit be **REMANDED** to the 20th Judicial District Court for the Parish of West Feliciana, State of Louisiana

### I.  Background

This is a civil action involving claims for damages based upon injuries allegedly sustained by Kara Jo Allen and Courtney Stricklin when a "tall, open dome like structure, constructed of wood, and designed to be climbed upon and over"[5] (referred to as the "Diesel Dome" or the "Dome") over which Allen and Stricklin were traversing "spontaneously collapsed"[6] during a "Warrior Dash" race held in October 2016.[7] On or about October 4, 2017, Plaintiffs filed a Petition

---

[1] R. Doc. 12.

[2] R. Doc. 25.

[3] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to de novo review." *Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 765 (5th Cir. 2016).

[4] R. Doc. 12.

[5] R. Doc. 1-2, p. 21, ¶ 58.

[6] R. Doc. 1-2, p. 22, ¶ 61.

[7] Petition for Damages, R. Doc. 1-2, pp. 9-28. Plaintiffs allege that Kara Jo Allen and Courtney Stricklin were participants in the October 8, 2016 Warrior Dash. R. Doc. 48, ¶¶ 56 & 60. Plaintiffs additionally include Gabriel Allen, who is married to Kara Jo Allen, and who asserts a claim for loss of consortium. R. Doc. 48, ¶ 75.

2

for Damages in state court against Red Frog, First Specialty Insurance Corporation ("First Specialty"), Peterson Builders Framing Contractors, LLC, ("Peterson"), Auto-Owners Insurance Company ("Auto-Owners"), North South Renovations, Inc. ("North South"), Nationwide Mutual Insurance Company ("Nationwide"), and the Parish of West Feliciana ("West Feliciana" or the "Parish") in the Twentieth Judicial District Court for the Parish of West Feliciana, State of Louisiana.[8]

The matter was removed to this court by Red Frog on November 15, 2017 on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).[9] Per its Notice of Removal, Red Frog asserts that, with the exception of West Feliciana, the parties to this action are completely diverse.[10] With respect to West Feliciana, Red Frog asserts that the Parish was improperly joined for the sole

---

[8] Thereafter, Plaintiffs were granted leave to file an Amended Complaint to add Marcus Edwards ("Edwards") and Daniel Lauber ("Lauber") as defendants. *See*, R. Docs. 21 & 46. The allegations as set forth in the Amended Complaint and the original Petition, including those related to Plaintiffs' allegations that the Diesel Dome should be considered playground equipment and that West Feliciana was negligent for failure to inspect and ensure the safety of that equipment, are the same in both pleadings.

[9] R. Doc. 1 at ¶ 9. With respect to the amount in controversy requirement, Red Frog asserts that Stricklin provided Red Frog with a pre-removal settlement demand of $151,898.00. R. Doc. 1, ¶ 22. Red Frog further avers that "[r]egardless of whether the injuries to Ms. Allen and Mr. Allen fail to satisfy the $75,000.00 jurisdictional threshold, the injuries and settlement demand provided by Ms. Stricklin clearly do. Further, the injuries and damages sought by Mr. and Mrs. Allen arise from the same transaction or occurrence (*i.e.*, the 2016 Warrior Dash race) as those of Ms. Stricklin. Therefore, because this Court has original diversity jurisdiction over Ms. Stricklin's claims, it also has supplemental jurisdiction over Mr. and Mrs. Allen's claims." R. Doc. 1, ¶ 24. While the undersigned finds that Ms. Stricklin's pre-removal settlement demand supports the position that the amount in controversy with respect to her claim likely exceeds $75,000, exclusive of interest and costs, it is not necessary to reach the issue of whether this court may exercise supplemental jurisdiction over the claims of Kara Jo Allen and Gabriel Allen because the undersigned finds that West Feliciana is a properly joined defendant and therefore the parties to this suit are not completely diverse.

[10] Per the Notice of Removal, Red Frog avers that it is a limited liability company with one member, Joseph Reynolds, who is a citizen of Illinois. R. Doc. 1, ¶ 12. Red Frog further avers that: (1) Peterson is a limited liability company whose sole member is a citizen of North Carolina, R. Doc. 1, ¶ 13; (2) Auto-Owners is incorporated in Michigan with its principal place of business in Michigan, R. Doc. 1, ¶ 14; (3) First Specialty is incorporated in Missouri with its principal place of business in Missouri, R. Doc. 1, ¶ 15; (4) North South is incorporated in North Carolina with its principal place of business in North Carolina, R. Doc. 1, ¶ 16; and (5) Nationwide is an Ohio corporation with its principal place of business in Ohio, R. Doc. 1, ¶ 17. With respect to the insurer defendants (Auto-Owners, First Specialty, and Nationwide), Red Frog asserts that these defendants additionally take on the citizenship of their insureds pursuant to 28 U.S.C. § 1332(c)(1)(A). Where the insured is also joined as a defendant, 28 U.S.C. § 1332(c)(1)(A) is inapplicable. *See*, *e.g.*, *Gorman v. Schiele*, Civil Action No. 15-790, 2016 WL 3583640, at * 4 (M.D. La. May 20, 2016) ("Since the insured was joined as a defendant, § 1332(c)(1)(A) is inapplicable in this case and XL Insurance is not deemed to be a Louisiana citizen."). In their Amended Complaint, Plaintiffs allege that both Lauber and Edwards are domiciled in North Carolina. R. Doc. 48, ¶ 1(h) & (i).

purpose of defeating diversity jurisdiction.[11] In the Notice of Removal, Red Frog asserts that pursuant to an agreement between West Feliciana and Red Frog (the "Venue Agreement"), Red Frog "received 'exclusive use' of the West Feliciana Parish Sports Park" (the premises wherein the Warrior Dash was hosted) and that West Feliciana "[i]n no manner…[had] anything to do with the construction of the allegedly-defective obstacle or the provision of medical services at the event…."[12] Red Frog avers that pursuant to the Venue Agreement "any and all responsibility for the condition, maintenance, use, occupation, operation, or alteration of the West Feliciana Sports Park was passed to Red Frog"[13] and that "Louisiana law imposes no legal duty on West Feliciana Parish to, *inter alia*, (1) monitor/supervise a private event (the Warrior Dash) that occurs on property that it leases to private entities and (2) ensure that temporary structures that may be used during a private event that occurs on its leased premises are safe."[14]

On November 22, 2017, Plaintiffs filed the instant Motion to Remand.[15] Plaintiffs argue that they have stated viable claims against West Feliciana and that the Parish is not entitled to statutory immunity pursuant to Louisiana's Recreational Use Statute for these claims. Plaintiffs further assert that the question of whether they have stated a claim against West Feliciana should be limited to a 12(b)(6)-type analysis, and that piercing the pleadings would be inappropriate. In opposition, Red Frog contends that the Parish was improperly joined because it is entitled to statutory immunity and because it otherwise owed no duty under Louisiana law.

### II. Law and Analysis

---

[11] R. Doc. 1, ¶ 18 ("West Feliciana is a Louisiana citizen. However…its Louisiana citizenship is not considered because Plaintiffs have improperly joined West Feliciana Parish – a party that owed Plaintiffs no duty, nor performed any negligent conduct herein – with the sole purpose of defeating complete diversity."). *See also*, R. Doc. 1, ¶¶ 26-33.

[12] R. Doc. 1, ¶ 29.

[13] R. Doc. 1, ¶ 31.

[14] R. Doc. 1, ¶ 30.

[15] R. Doc. 12.

4

### A. Removal Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[16] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[17] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[18] In removed actions, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court.[19] The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[20] The removing party has the burden of proving federal diversity jurisdiction.[21] Remand is proper if at any time the court lacks subject matter jurisdiction.[22]

### B. The Forum Defendant Rule Does Not Require Denial of the Motion to Remand

In opposition to the Motion to Remand, Red Frog includes a discussion of the forum defendant rule and asserts that West Feliciana was not served at the time of removal.[23] The forum defendant rule of § 1441(b) provides that when the federal court's original jurisdiction is based on diversity of citizenship, the civil action "may not be removed if any of the parties in interest

---

[16] 28 U.S.C. § 1441(a).

[17] 28 U.S.C. § 1332(a)-(a)(1).

[18] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

[19] *Coury v. Prot*, 85 F.3d 244, 248-289 (5th Cir. 1996) (citation omitted). No party is arguing that there was any change in jurisdictional facts between the filing of the suit in state court and the removal of the case to this court.

[20] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

[21] *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

[22] *See*, 28 U.S.C. § 1447(c).

[23] *See*, R. Doc. 25, pp. 4-5.

properly joined *and served* as defendants is a citizen [of the State] in which such action is brought."[24] "The majority of courts that have considered the question, including multiple district courts within this circuit, have ruled that the plain language of § 1441(b)(2) bars removal only where the forum defendant was properly served at the time of removal, and that the presence of a forum defendant will not create a defect if that defendant was not properly served at the time of removal."[25]

Plaintiffs do not rely on the forum defendant rule in support of their Motion to Remand, and it is unclear why Red Frog includes an analysis of same in its opposition. To the extent Red Frog argues that the citizenship of an unserved, non-diverse defendant should be disregarded for purposes of this court's jurisdictional analysis,[26] the Fifth Circuit has held that "non-diverse citizenship cannot be ignored simply because [the defendant is] an unserved defendant."[27] "A non-resident defendant cannot remove an action if the citizenship of any co-defendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or non-service upon the co-defendant. Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service."[28] Accordingly, the citizenship of West Feliciana cannot be

---

[24] 28 U.S.C. § 1441(b)(2) (emphasis added).

[25] *Gorman v. Schiele*, Civil Action No. 15-790, 2016 WL 3583640, at * 5 (M.D. La. May 20, 2016) (collecting cases).

[26] *See*, R. Doc. 25, p. 5 ("Plaintiffs did not properly serve the Parish with Citation and the Petition before Red Frog's removal. Indeed, the State Court record indicates that service on the Parish was unsuccessful. Therefore, because the Parish's Louisiana citizenship cannot be considered under 28 U.S.C. § 1441(b)(2) and *Leech*, complete diversity existed at the time of Red Frog's removal.").

[27] *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir. 1998).

[28] *Id.* (collecting cases). *See also*, *Porter v. Loney*, Civil Action No. 16-100, 2017 WL 9485598, at * 4 (M.D. La. May 18, 2017) ("To be clear, '[t]he United States Supreme Court has held that the citizenship of all defendants, whether served with process or not, is to be considered when determining whether complete diversity exists in a removed lawsuit.'") (citing *In re Norplant Contraceptive Products Liability Litigation*, 889 F.Supp. 271, 273 (E.D. Tex. 1995) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939)); *Aydell v. Sterns*, 677 F. Supp. 877, 879 (M.D. La. 1988) ("We begin by recognizing that the simple fact that a resident [and non-diverse] defendant has not yet been served does not, in and of itself, entitle a non-resident [and diverse] defendant to remove.").

6

ignored on the basis that it was not served at the time of removal, and the undersigned proceeds with consideration of the propriety of Plaintiffs' joinder of West Feliciana.

### C.  Improper Joinder Standard

The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper.[29]  To meet its burden, the removing party must show (1) an actual fraud in the pleading of jurisdictional facts, or (2) an inability of the plaintiff to establish a cause of action against the non-diverse party in state court.[30]  Red Frog has not alleged actual fraud in the Petition.[31]  The undersigned will therefore only consider the second approach (*i.e.*, inability to establish a cause of action) in analyzing the propriety of West Feliciana's joinder.

Under the second approach, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[32]  The court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff.[33]  If the court concludes that the plaintiff has any "possibility of recovery against the party whose

---

[29] *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).  Red Frog recognizes that as the removing party, it "bears the burden of demonstrating improper joinder." R. Doc. 25, p. 5.

[30] *Id*. at 646-47.

[31] *See*, R. Doc. 1, ¶ 26 ("Here, the first test is not implicated; however, in applying the second test, courts are to determine whether there is a reasonable basis for predicting that state law 'might impose liability on the facts involved.'") (citing *Travis*, 326 F.3d at 647-648).

[32] *Smallwood v. Illinois Cent. R. Co*., 385 F.3d 568, 573-74 (5th Cir. 2004).

[33] *Travis*, 326 F.3d at 649.

7

joinder is questioned" then joinder is proper and the case must be remanded for lack of subject matter jurisdiction.[34] "The possibility must be reasonable, not merely theoretical."[35]

The Fifth Circuit has explained that to determine whether a plaintiff has a reasonable basis of recovery under state law, a court can resolve the issue in one of two ways.[36] "The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[37] However, where a plaintiff has omitted or misstated "discrete facts that would determine the propriety of joinder," the district court may "pierce the pleadings and conduct a summary inquiry" to determine whether a non-diverse defendant has been improperly joined.[38] The Fifth Circuit has explained that, "[a]lthough a court may pierce the pleadings and consider summary-judgment type evidence, the standard for finding improper joinder is not the summary judgment standard in which an absence in the plaintiff's proof alone can be fatal."[39] The Fifth Circuit in *Davidson* explained that:

> The examples of improper joinder based on "discrete and undisputed facts" outside the pleadings that *Smallwood* provides are consistent with this language requiring a defendant to "preclude" the possibility of recovery: evidence showing that "the in-state doctor defendant did not treat the plaintiff," that "the in-state pharmacist defendant did not fill a prescription for the plaintiff patient," that "a

---

[34] *Id.*

[35] *Serrano v. Otis Elevator Company*, Civil Action No. 16-15460, 2017 WL 479576, at * 2 (E.D. La. Feb. 6, 2017) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).

[36] *Smallwood*, 385 F.3d at 573.

[37] *Id.* (citations omitted).

[38] *Id.* (citation omitted).

[39] *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 766 (5th Cir. 2016) (citing *Travis v. Irby*, 326 F.3d 644, 650 n. 3 (5th Cir. 2003)).

8

  party's residence was not as alleged, or any other fact that easily can be *disproved* if not true."[40]

Although the district court may consider such discrete and undisputed facts, the Fifth Circuit has "frequently cautioned the district courts against pretrying a case to determine removal jurisdiction...."[41]

### 1. Plaintiffs' Allegations Regarding West Feliciana

  Plaintiffs allege that "West Feliciana Sports Complex is a municipal park owned and operated by The Parish of West Feliciana, a political subdivision within the State of Louisiana"[42] and that West Feliciana "offers the West Feliciana Sports Complex as a venue available to host events."[43] Plaintiffs allege that "[o]n Saturday, October 8, 2016, [Red Frog] produced and hosted a 'WARRIOR DASH' race at the West Feliciana Sports Park in St. Francisville, Louisiana" and that "[c]onsistent with the 'WARRIOR DASH' model, twelve (12) man-made obstacles were positioned along the 5 kilometer race path."[44] Plaintiffs further contend that Red Frog contracted with North South and/or Peterson to construct the obstacles, including the Diesel Dome,[45] and that the Dome "spontaneously collapsed" while Kara Jo Allen and Courtney Stricklin were climbing it.[46]

  Plaintiffs repeatedly assert in their Petition that although commonly referred to as "obstacles," the twelve items used in the Warrior Dash should be categorized as "simply

---

[40] 819 F.3d at 766-67 (citing *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573-74 & n. 12 (5th Cir. 2004)) (emphasis added in *Davidson*).

[41] *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).

[42] R. Doc. 1-2, p. 20, ¶ 47.

[43] R. Doc. 1-2, p. 20, ¶ 48.

[44] R. Doc. 1-2, p. 21, ¶¶ 55-56.

[45] R. Doc. 1-2, p. 21, ¶¶ 57-58.

[46] R. Doc. 1-2, p. 22, ¶ 61.

9

playground equipment."[47] Plaintiffs contend that West Feliciana must be aware of defective playground equipment and must inspect, test, and insure that any and all playground equipment constructed upon or within the Sports Complex is safe for its intended use and is in compliance with "any and all applicable codes" and "any known engineering plans."[48] Plaintiffs assert their damages were caused by the fault and negligent acts and omissions of West Feliciana including but not limited to:

> a. Failure to know, or in the exercise of reasonable care, know of defective playground equipment within the West Feliciana Sports Complex;
>
> b. Failure to inspect and insure that all playground equipment within and upon the Sports Complex property is safe for its intended use;
>
> c. Failure to insure that any and all playground equipment constructed upon or within the Sports Complex must comply with any and all applicable codes;
>
> d. Failure to insure that any and all playground equipment constructed upon or within the Sports Complex must be constructed in a manner that it complies with any known engineering plans for safe construction and intended use;
>
> e. Failure to inspect any and all playground equipment constructed upon or within the Sports Complex to insure it is safe for its intended use; and
>
> f. Failure to test any and all playground equipment constructed upon or within the Sports Complex to insure it is safe for its intended use.[49]

In addition to asserting the general negligence of all defendants, Plaintiffs "invoke CC Art 2317.1 as a basis for liability of defendants…in that the defendants were owners and/or custodians of the subject 'Diesel Dome', of which was burdened by a defect, said defect not being open or obvious,

---

[47] R. Doc. 1-2, p. 20, ¶ 49.  As discussed below, this characterization is significant with respect to potential tort immunity under the Louisiana Recreational Use statute, La. R.S. § 9:2795(B).

[48] R. Doc. 1-2, p. 20, ¶¶ 49-54.

[49] R. Doc. 1-2, p. 25, ¶ 66.

10

wherein the named defendants knew, or in the exercise of reasonable care, should have known of the defect, and failed to take adequate steps to prevent the harm caused by the defect."[50]

### 2. Louisiana Negligence Law

"In general, landowners and land occupiers have a duty to refrain from acting negligently toward those they know or should have known will come onto their property. The duty of a governmental agency or municipality operating a public park is held to keep the premises in a reasonably safe condition for those using the park and to discover any unreasonably dangerous conditions on the premises and to either correct the conditions or warn of the danger."[51]  "A governmental agency or municipality operating a public park or playground is held to the same degree of care arising from ownership as any other person in possession and control of land; this rule requires that the agency or municipality use reasonable or ordinary care to keep the premises in reasonably safe condition for those using them."[52]

Louisiana Civil Code article 2317.1, which Plaintiffs explicitly cite in their Petition, imposes a negligence standard and provides that "[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." Plaintiffs allege that the Dome should be considered playground equipment and that West Feliciana was negligent, *inter alia*, in its "[f]ailure to know or in the exercise of reasonable care, know of defective playground equipment…."[53] Plaintiffs

---

[50] R. Doc. 1-2, p. 25, ¶ 69.

[51] *McGuire v. New Orleans City Park Imp. Ass'n*, 835 So. 2d 416, 419-420 (La. 2003).

[52] *Dussouy v. City of Kenner*, 710 So.2d 1200, 1203 (La. App. 5 Cir. 1998).  *See also*, *Waring v. Travelers Ins. Co.*, 891 So.2d 119, 126 (La. App. 4 Cir. 2005) (same).

[53] R. Doc. 1-2, p. 25, ¶ 66(a).

11

further allege that the Parish "offer[ed] the West Feliciana Sports Complex as a venue to host events" (including the Warrior Dash) and that the Parish "must insure that any and all playground equipment within and upon the Sports Complex property is safe" and "compl[ies] with any and all applicable codes."[54] Although such allegations verge dangerously close to conclusory, the undersigned finds that Plaintiffs' allegations that West Feliciana offered its property for use by Red Frog for the Warrior Dash, and that West Feliciana failed to inspect and test one of the pieces of equipment constructed on its property for the Warrior Dash are sufficient to withstand scrutiny under Rule 12(b)(6).[55]

In opposition to Plaintiff's Motion to Remand, Red Frog asserts that "[t]he Warrior Dash occurred at the West Feliciana Sports Park, but the Parish had nothing to do with the Warrior Dash and the construction of the obstacles."[56] Red Frog explains that in preparing for the race, it "entered into a Venue Agreement ('Agreement') with the Parish, wherein Red Frog received exclusive use of (*i.e.*, leased) the West Feliciana Sports Park, which is owned by the Parish. The Agreement did not allow the Parish to monitor or supervise the event or construct or inspect the obstacles, it also did not grant the Parish ownership, custody, or control of the obstacles."[57] In

---

[54] R. Doc. 1-2, p. 20, ¶¶ 48, 50, & 51.

[55] *Compare*, *Lee v. FAEC Holdings (LA), LLC*, Civil Action No. 13-418, 2014 WL 4699491, at * 3 (M.D. La. Sept. 18, 2014) (explaining that to survive a motion to dismiss, plaintiff asserting premises liability claim against lessor must allege "(1) lessor had custody over the premises; (2) premises contained an unreasonable risk of harm; (3) the defective condition caused plaintiff's injuries; and (4) lessor, as the landlord, either "retained responsibility for all defective conditions on the property or [lessor] 'knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time'" and finding that petition failed to state a claim against lessor because there was nothing in the petition to connect defendant to the premises, failed to allege the lessor/lessee relationship, and failed to allege either that lessor retained responsibility for all defective conditions or knew or should have known of the defective conditions and failed to remedy same within a reasonable time); *Giles v. Wal-Mart, Louisiana LLC*, Civil Action No. 16-2413, 2016 WL 2825778 (E.D. La. May 13, 2016) (plaintiff's allegation that "all defendants had actual or constructive knowledge that an unreasonably dangerous condition existed and/or that a hole in the floor of the premises existed" was an insufficient, conclusory allegation the court was not required to accept in considering whether lessor of property had actual or constructive knowledge of the alleged defect). In contrast to these cases, Plaintiffs here allege that West Feliciana offered its property for use during the Warrior Dash, and was required to test and inspect equipment, including the Diesel Dome, which was temporarily constructed on the Parish's property.

[56] R. Doc. 25, p. 2.

[57] R. Doc. 25, pp. 2-3.

12

making these factual assertions, Red Frog relies on a Declaration executed by Megan Gaesor,[58] a Red Frog employee who states she was "an Event Director" at the Warrior Dash, and the Venue Agreement itself, which is attached to Ms. Gaesor's Declaration.[59]

La. R.S. § 9:3221, which Red Frog asserts is applicable here, provides that "the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time."

Assuming, *arguendo*, that the Venue Agreement constitutes a lease (and that Louisiana law applies),[60] it is not clear as an initial matter that pursuant to the Venue Agreement "any and all responsibility for the condition, maintenance, use, occupation, operation, or alteration of the West Feliciana Sports Park was passed to Red Frog."[61] While the Venue Agreement provides Red Frog "exclusive use" of certain portions of the West Feliciana sports complex "for an obstacle course race, festival area and vehicle parking," it also provides that the West Feliciana Sports Park "shall

---

[58] Rather than rely on Ms. Gaesor's characterization of the Venue Agreement, the undersigned has reviewed the Agreement itself.

[59] *See*, R. Docs 25-2 & 25-3.

[60] Under Louisiana law, a lease is a "contract by which one party, the lessor, binds himself to give the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay." La. CC art. 2668. "There are two requirements for a lease to exist: agreement as to the thing leased and the rent." *Premiere, Inc. v. GBR Equipment, Inc.*, Civil Action No. 6:10-627, 2011 WL 4499428, at * 1 (W.D. La. Sept. 23, 2011). The Venue Agreement provides that it "shall be governed by the laws of the State of Illinois." R. Doc. 25-3, ¶ 13(i). "In Illinois, a lease is a particular kind of contract with specific elements required to be enforceable. In order to be enforceable, the purported lease agreement must specify: '(1) the extent and bounds of the property; (2) the term of the lease; (3) the amount of rent; and (4) the time and manner of payment.'" *Citadel Group Ltd. v. Washington Regional Medical Ctr.*, 784 F.Supp.2d 949, 958 (N.D. Ill. 2011) (citations omitted).

[61] R. Doc. 1, ¶ 31. Red Frog focuses on the fact that Plaintiffs have not adequately alleged that West Feliciana knew or should have known of the defect and failed to cure. However, Red Frog has to establish that it assumed responsibility for the condition of the premises regardless of Plaintiffs' allegations. Per the Agreement, Red Frog was granted exclusive use of property depicted on Exhibit A attached to the Agreement "for an obstacle course race, festival area and vehicle parking." R. Doc. 25-3, p. 1. However, and as discussed herein, it is not clear from the Agreement that all responsibility for the condition of the premises was transferred to Red Frog.

13

retain the right to access the Property during the Events."[62] The Venue Agreement provides that Red Frog would "[p]rovide all necessary labor and materials to construct Event obstacles,"[63] but also requires the Venue to provide specified areas for the construction of certain obstacles.[64] Finally, the Venue Agreement requires Red Frog to list the Venue as an additional insured under Red Frog's applicable insurance policies[65] and includes the following reciprocal indemnification provision:

> RFE [Red Frog] shall indemnify, defend and hold Venue [West Feliciana Sports Park]…harmless from and against all actions, suits, proceedings, judgments, demands, claims, liabilities, losses or expenses, including reasonable attorneys' fees, due to RFE's negligence, gross negligence or intentional acts or omissions that give rise to a claim in connection with the Event. Likewise, Venue shall indemnify, defend and hold RFE…harmless from and against all actions, suits, proceedings, judgments, demands, claims, liabilities, losses or expenses, including reasonable attorneys' fees, due to Venue's negligence, gross negligence or intentional acts or omissions that give rise to a claim in connection with the Event.[66]

In light of these provisions, the undersigned finds that the Venue Agreement does not, at least at this initial stage of these proceedings, provide a basis for finding that there is no possibility of recovery by Plaintiffs against the Parish.[67] As explained above, Red Frog's burden to establish

---

[62] R. Doc. 25-2, p. 1.

[63] R. Doc. 25-3, ¶ 4(a).

[64] R. Doc. 25-3, ¶ 3(e) & (f). While the Venue Agreement requires Red Frog to "comply with all laws, codes, rules, orders, ordinances, directions, regulations, and requirements of federal, state, county, and municipal authorities, now in force or which may hereafter be in force, which shall impose any duty upon Venue or RFE with respect to any condition, maintenance, use, occupation, operation or alteration of the Premises as it may relate to the conduct of the Events," R. Doc. 25-3, ¶ 4(j), such provision does not appear to absolve the Venue from also complying with such laws and requirements. Additionally, on the day after the event, the Parish was obligated to perform a walk-through of the property in conjunction with Red Frog "for the purpose of identifying and agreeing on any areas where there is damage, if any, to the Venue that exceeds reasonable wear and tear or permitted use for an event of this nature…." R. Doc. 25-3, ¶¶ 3(d) & 4(h).

[65] R. Doc. 25-3, ¶ 4(i).

[66] R. Doc. 25-3, ¶ 10.

[67] *Travis*, 326 F.3d at 649. *See*, *Sam v. Theriot*, 49 So. 2d 484 (La. App. 1 Cir. 1950) (rendering judgment in favor of owner of tract of land (which was characterized as an amusement park with grandstand) following trial on the merits where land owner leased his premises to the owner of a "Hell Driving" exhibition during which a vehicle skidded into a child and caused fatal injuries because a formal lease was executed whereby owner of exhibition "would have full control of the premises and of the exhibition and would be responsible for all possible damage" and distinguishing

the improper joinder of West Feliciana is a heavy one,[68] and the Fifth Circuit has "frequently cautioned the district courts against pretrying a case to determine removal jurisdiction...."[69] At this stage of these proceedings, the undersigned finds that, based on the allegations of the Petition, Plaintiffs have sufficiently stated a claim against West Feliciana.[70]

### 3. Louisiana Recreational Use Immunity

La R.S. § 9:2795(B) provides, *inter alia*, that:

> (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or

---

cases wherein the "owner of the premises involved had retained possession or control thereof."); *St. Pierre v. Frey Amusement*, 635 So. 2d 358 (La. App. 4 Cir. 1994) (granting summary judgment in favor of a church which had entered into a contract with defendant Frey Amusement to provide shows, rides, and concessions for a church fair where teenagers decided to go down a "superslide" after the rides had closed and disassembly of the slide had begun based on affidavit stating that Frey Amusement had exclusive control over the ride and was responsible for the assembly, operation, and disassembly of the ride and plaintiff's failure to provide any rebuttal evidence). While Ms. Gaesor's affidavit here is certainly similar to that supporting summary judgment in *St. Pierre*, the Fifth Circuit has cautioned that "[a]lthough a court may pierce the pleadings and consider summary-judgment type evidence, the standard for finding improper joinder is not the summary judgment standard in which an absence in the plaintiff's proof alone can be fatal." *Davidson*, 819 F.3d 758, 766. Whether the alleged owner of the property on which this accident occurred had no control over the premises and otherwise cannot be found liable is not the sort of easily disproved fact contemplated within the improper joinder analysis. *Id*.

[68] *Id*.

[69] *Carriere*, 893 F.2d at 100. Ms. Gaesor asserts, *inter alia*, that the Venue Agreement "did not grant West Feliciana Parish the right to monitor or supervise the event or conduct inspections or repairs of the obstacles" and that "[n]o West Feliciana Parish employee or representative was present at the West Feliciana Parish Sports Park in a supervisory capacity or to inspect the Diesel Dome during preparations for the 2016 Warrior Dash or on the day of the actual race…." R. Doc. 25-2, ¶¶ 6 & 9. As noted above, to the extent Red Frog asks the court to rely on Ms. Gaesor's interpretation of the Venue Agreement, the undersigned has instead reviewed the Agreement itself. To the extent Red Frog asserts that as a factual matter, no employee or representative of West Feliciana was present in a supervisory capacity or to inspect the Dome, such assertion seems to lend support to Plaintiffs' allegation that West Feliciana failed to inspect the Dome despite a duty to do so, and, in any event, the Parish's role and responsibility with respect to the Warrior Dash is more appropriately determined via discovery rather than solely on Ms. Gaesor's Declaration.

[70] Red Frog argues that West Feliciana cannot be held liable under general negligence law because it had no ownership, custody, or control over the Diesel Dome. R. Doc. 25, pp. 14-15. In support of that position, Red Frog relies on *White v. Gulf States Utilities Co.*, 525 So. 2d 145 (La. App. 3 Cir. 1988). In *White*, the court affirmed a directed verdict in favor of Gulf States Utility Company where there was no evidence in the record to "even intimate that Gulf States had custody" over a temporary construction elevator and therefore could not be held liable for injuries plaintiff sustained when his arm became lodged between the elevator's counterbalance and the tower itself. Red Frog contends that "similar to Gulf States Utilities from the *White* case, the Parish had no ownership, custody, or control over the Diesel Dome obstacle or supervised the Warrior Dash." R. Doc. 25, p. 15. The undersigned finds that the Parish's custody or control over the Dome, especially in light of Plaintiffs' allegations that the Parish was required to inspect and test the Dome, to be a fact issue not amenable to a determination within the context of an improper joinder analysis.

> facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
>
>> (a) Extend any assurance that the premises are safe for any purposes.
>> (b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
>> (c) Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made.

The statute defines "land" to include "urban or rural land, roads, water, watercourses, private ways or buildings, structures, and machinery or equipment when attached to the realty"[71] and provides that "recreational purposes" "includes but is not limited to any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized, or nonmotorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or viewing or enjoying historical, archaeological, scenic, or scientific sites."[72] The statute further provides that "[t]he limitation of liability provided in this Section shall apply to any lands, whether urban or rural, which are owned, leased, or managed as a public park by the state or any of its political subdivisions and which are used for recreational purposes."[73] Red Frog argues that "§ 9:2795's immunity statute clearly applies here because Plaintiffs fail to plead allegations that the Parish willfully or maliciously failed to warn of the alleged defect in the Diesel Dome…."[74]

Significant to the instant Motion to Remand, La. R.S. § 9:2795(E)(2)(c) provides that "[f]or purposes of the limitation of liability afforded to parks pursuant to this Section this limitation does

---

[71] La. R.S. § 9:2795(A)(1).

[72] La. R.S. § 9:2795(A)(3).

[73] La. R.S. § 9:2795(E)(2)(a).

[74] R. Doc. 25, p. 10.

not apply to playground equipment or stands which are defective." As set forth above Plaintiffs have specifically alleged that the Dome should be considered "playground equipment."[75] While Red Frog argues that such characterization is "dubious" and that the policy behind the playground equipment exception "clearly contemplates that playground equipment and bleachers excepted from the immunity is in the control of the public entity and that the public entity is responsible for maintaining these items," Red Frog provides no support for that reading. Further, the undersigned's research indicates that the question of whether a defendant is entitled to immunity pursuant to the statute is one usually analyzed within the context of a motion for summary judgment.[76] While "summary judgment-type" evidence may be considered in some instances during an improper joinder analysis, whether the Diesel Dome should be characterized as "playground equipment" for purposes of the statute appears to be a more factually intensive inquiry than that contemplated by *Davidson* – *i.e.*, this is not the type of fact that can be "easily disproved if not true."[77] The allegations set forth in the Petition are sufficient to survive a Rule 12(b)(6) challenge based on the assertion of statutory immunity and the undersigned finds that an analysis

---

[75] *See also*, R. Doc. 12-1, p. 9 ("At all times, including within the Petition for Damages, Plaintiff has alleged the 'obstacles', 'constructs', and 'Diesel Dome' are simply playground equipment. What they are made of, or their temporary nature is not germane to what they are. It is their intended use and who is intended to use them that dictates what they are. The 'Diesel Dome' is designed to be in a park, to be climbed across in a recreational manner, by persons as young as ten years old. A rose by any other name is still a rose, and a 'Diesel Dome' is simply playground equipment.").

[76] *See*, *e.g.*, *Sexson v. Boise Cascade Corp.*, No. 2:12-CV-02846, 2013 WL 3894106 (W.D. La. July 25, 2013) (granting summary judgment in favor of defendant based on recreational use immunity statute where cross country coach fell into a covered hole on defendant's premises during a high school cross country meet based on, *inter alia*, deposition testimony use of the property for the meet and explaining that "[o]nce a defendant establishes that it is entitled to immunity under § 9:2795, the burden of establishing a malicious or willful failure to warn of a dangerous condition shifts to the plaintiff."); *Benoit v. City of Lake Charles*, 907 So. 2d 931 (La. App. 3 Cir. 2005) (granting summary judgment in favor of city based on recreational use immunity statute but finding genuine issues of material fact precluded granting summary judgment in favor of United States Specialty Sports Association based on the immunity statute); *Simoneaux v. Lafayette Consolidated Government*, Nos. CW 12-774, CA 12-969, 2013 WL 1858612 (La. App. 3 Cir. May 1, 2013) (unpublished) (explaining that § 9:2795 "retains liability for (1) willful or malicious failure to warn against a dangerous condition, use, structure, or activity; (2) playground equipment or stands which are defective; and (3) intentional or grossly negligent acts by an employee of the public entity" and granting summary judgment in favor of defendants plaintiff offered no evidence of gross negligence.).

[77] 819 F.3d at 766.

17

of whether the Diesel Dome should be considered playground equipment for purposes of the statute is not the type of "discrete fact" contemplated by the Fifth Circuit and would instead require this court to improperly "pretry[] [this] case to determine removal jurisdiction...."[78]

### III. Conclusion

The Removing Defendants bear the heavy burden of proving improper joinder.[79] The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[80] Here, based on the allegations set forth in Plaintiffs' Petition, the undersigned finds that Red Frog has not met its heavy burden of establishing that there is no reasonable possibility that Plaintiffs may recover against West Feliciana. The undersigned therefore finds that West Feliciana is a properly joined, non-diverse defendant. Accordingly, for the reasons set forth herein, the undersigned recommends that the Motion to Remand[81] be **GRANTED** and that this matter be remanded to the 20th Judicial District Court, Parish of West Feliciana.

Signed in Baton Rouge, Louisiana, on August 14, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[78] *Carriere*, 893 F.2d at 100.

[79] *Travis*, 326 F.3d at 649.

[80] *Gasch*, 491 F.3d at 281-82.

[81] R. Doc. 12.